THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GENE L., | ) | |
| | ) | No. 25 C 5599 |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| FRANK BISIGNANO, | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of Defendant Frank Bisignano, the Commissioner of the Social Security Administration ("SSA"), denying Plaintiff Gene L.'s[1] claims for disability insurance benefits and supplemental security income Plaintiff requests that the Court modify the Commissioner's decision to award him benefits. The Commissioner asks the Court to reverse the Commissioner's decision and remand the case to the SSA. For the reasons below, the Commissioner's Motion for Remand [12] is granted.

## BACKGROUND

### I. Procedural History

This matter has a lengthy procedural history spanning over ten years. Plaintiff suffers from generalized anxiety disorder, bipolar disorder, depression, mood disorder, and degenerative disc disease of the lumbar spine. (Dkt. 10-1 at 485). He applied for disability insurance benefits in December 2014, alleging a disability onset date of September 14, 2024. (Dkt. 10-1 at 216)[2]. He applied for supplemental security income in January 2015. (*Id.* 218). The claims were denied

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.
[2] Plaintiff filed a subsequent claim for disability insurance benefits on February 13, 2019. (Dkt. 10-1 at 668). The Appeals Council consolidated the claims. (*Id.*).

initially and upon reconsideration. (*Id.* 101-129). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 5, 2017 before ALJ Laurie Wardell. (*Id.* 47, 149-51). ALJ Wardell found that Plaintiff was not disabled and denied him disability insurance benefits and supplemental security income. (*Id.* at 26-40).

On April 18, 2018, the Appeals Counsel denied review of the ALJ's decision. (*Id.* at 11-14). On June 1, 2020, on appeal, the Honorable Robert W. Gettleman of the Northern District of Illinois remanded the matter to the Appeals Council, directing it to remand the case to the ALJ. (*Id.* at 647-65). On August 10, 2020, the Appeals Council vacated the May 2017 decision and remanded the case to ALJ Wardell for further proceedings consistent with the court's order. (*Id.* at 668).

## A. First Remand

ALJ Wardell held a second hearing on January 6, 2021. (Dkt. 10-1 at 674). Plaintiff testified that he lives alone in a second-floor apartment, and his brother lives in an apartment in the same building. (*Id.* at 555). Plaintiff received his GED. (*Id.* at 556). He last worked in 2013 doing repairs on cars and light trucks. (*Id.*). This work required him to be on his feet for eight hours a day and lift up to 100 pounds. (*Id.*). Plaintiff testified that he can drive himself around, get himself dressed and bathed, do housework, and prepare meals for himself. (*Id.* at 654-66). With respect to his physical capabilities, Plaintiff testified that he has back pain "all the time" that has prevented him from working. (*Id.* at 557). He experiences back pain at levels between three and ten on a pain scale from zero to ten. (*Id.* at 558). To manage his back pain, Plaintiff testified that he occasionally takes pain medication prescribed by his doctors. (*Id.* at 558-59). Plaintiff further testified that he can comfortably drive for about one hour, stand and walk for about one hour each, and lift about 10 pounds. (*Id.* at 555, 560-61). He does not use a cane to walk. (*Id.* at 569).

Plaintiff also testified that he experiences anxiety and stress "pretty much all the time" and has a panic attack at least twice a week. (*Id.* at 562). His panic attacks are triggered when he is around more than ten people. (*Id.* at 563). Plaintiff testified that he manages his mental health issues by taking medication for anxiety prescribed by his doctors. (*Id.*). He declined to participate in talk therapy because he does not like to "talk to people." (*Id.* at 568). Plaintiff spends time with his brother once or twice a week. (*Id.* at 564). He can use a computer for about one hour. (*Id.* at 567). A vocational expert also testified that Plaintiff could not perform his past work, but that there were jobs in the national economy he could do. (*Id.* at 570-575).

On April 13, 2021, AJR Wardell found that Plaintiff was not disabled and denied him disability insurance benefits and supplemental security income. (*Id.* at 674-90). On July 2, 2022, the Appeals Council remanded the case to a new ALJ. (*Id.* at 703-04). The Appeals Council found that the April 2021 Opinion did not contain an adequate evaluation of opinion evidence in the assessment of Plaintiff's residual functional capacity ("RFC"). In particular, the April 2021 Opinion did not address why certain limitations opined by one of Plaintiff's treating physicians, Dr. Mitchell Goldflies, were not adopted even though they were consistent with the record. (*Id.* at 704). The Appeals Council instructed the ALJ to give further consideration to Plaintiff's maximum residual functional capacity, including evaluating treating and non-treating opinions and explaining the weight given to each opinion. (*Id.*).

### B. Second Remand

#### 1. August 2023 Hearing Testimony

ALJ Bill Laskaris held a third hearing on August 24, 2023. (Dkt. 10-1 at 482). Plaintiff testified that he cannot work because of his anxiety, pain, and mobility issues. (*Id.* at 538). Since the 2021 hearing, Plaintiff's living arrangements have not changed, and he has not worked. (*Id.* at

529). Plaintiff's health condition has stayed mostly the same since 2021, but his back issues have gotten slightly worse. (*Id.* at 530). Plaintiff testified that he has pain in his back and legs and numbness in his legs and feet. (*Id.* at 532). He has not taken any pain medication to treat his back pain since the 2021 hearing, but he has occasionally taken a muscle relaxer prescribed by his doctor. (*Id.* at 532-33). He has not had surgery on his back, nor was surgery recommended by his doctors. (*Id.* at 541). Plaintiff further testified that he manages his mental health issues by taking medication prescribed by his doctors. (*Id.* at 18).

Plaintiff testified that he can take care of himself, drive himself to the grocery store and appointments, do chores around his apartment, prepare frozen and canned meals for himself, feed himself, and dress himself. (*Id.* at 534-37). He can shower but struggles with back pain when he does. (*Id.* at 536-37). Plaintiff also experiences back pain when doing laundry because he has to walk down to the basement of the apartment building to access the machines. (*Id.* at 535). He does not leave his apartment often and does not speak to others when he is out but does not have an issue with interacting with employees at the grocery store. (*Id.* at 538-39).

A vocational expert testified at the hearing that a hypothetical person of Plaintiff's age, education, work experience, and skill with the same residual functional capacity as Plaintiff could not perform Plaintiff's past work. (*Id.* at 543-44). (*Id.*). The expert further testified that this hypothetical individual could work in the national economy as a weight tester, preparer of jewelry, and sorter. (*Id.*). If, however, the hypothetical individual could only stand, walk, and sit for two hours per day; missed two or more days of unscheduled absences per month due to physical or mental health issues; or needed to take three additional ten-minute breaks, the expert testified that there would not be any competitive employment for such an individual. (*Id.* at 545-46). Plaintiff did not ask any questions of the expert. (*Id.* at 546).

### 2. ALJ Decision (December 2023)

On December 27, 2023, ALJ Laskaris found that Plaintiff was not disabled. (Dkt. 10-1 at 500). ALJ Laskaris analyzed Plaintiff's claims using the five-step analysis under 20 C.F.R. § 404.1520(a). ALJ Laskaris found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 14, 2014. (Dkt. 10-1 at 485). At step two, the ALJ concluded that Plaintiff suffers severe impairments of generalized anxiety disorder bipolar disorder, depression, mood disorder, and degenerative disc disease of the lumbar spine. (*Id.*).

At step three, ALJ Laskaris determined that none of Plaintiff's impairments or combination of impairments met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). (*Id.*). The ALJ found that Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) and 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina) were not met because there is no evidence of a documented medical need for a walker, crutches, canes, or a wheelchair. (*Id.*); *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ also noted that there was no documented inability to use one upper extremity to complete work-related activities. (Dkt. 10-1 at 485). Additionally, ALJ Laskaris found that the severity of Plaintiff's mental impairments did not meet Listing 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). (*Id.* at 486); *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ concluded that, based on Plaintiff's medical records and hearing testimony, Plaintiff had only moderate limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (Dkt. 10-1 at 486-87).

Next, ALJ Laskaris determined that Plaintiff has a residual functional capacity ("RFC") to perform light work with the following limitations: sit for six hours per eight-hour work day; stand

and walk for four hours per eight-hour work day; required sit-stand option allowing Plaintiff to sit for two hours and stand for 45 minutes and vice versa; frequent bilateral operation of foot controls; frequent bilateral overhead reaching; frequent bilateral reaching; frequent bilateral handling and fingering; frequent bilateral push and pull; occasionally climbing leather ropes and scaffolds; frequent ramps and stairs; frequent balancing, stooping, kneeling, crouching, and crawling; occasional exposure to unprotected heights and moving machinery; frequent operation of a motor vehicle; frequent exposure to humidity, wetness, and pulmonary irritants; frequent exposure to extreme cold and heat; frequent exposure to vibrations; and avoiding concentrated exposure to loud noises. (*Id*. at 487). Plaintiff is further limited to performing work involving simple, routine, and repetitive tasks, simple work-related decisions, no strict production requirements, occasional changes in the work setting, no interaction with the public, and occasional interaction with coworkers and supervisors. (*Id.*). The ALJ determined Plaintiff's RFC based on medical findings in the record, the nature and frequency of treatment, Plaintiff's testimony, and opinion evidence from Plaintiff's treating physicians and the SSA's consulting physicians. (*Id.* at 487-98).

At step four, ALJ Laskaris determined that, given Plaintiff's RFC and the vocational expert's undisputed testimony, Plaintiff could not perform his past relevant work. (*Id.* at 498). Finally, at step five, ALJ Laskaris determined that, based on the vocational expert's undisputed testimony, Plaintiff could work as a weight tester, jewelry preparer, and sorter—jobs that exist in significant numbers nationally. (*Id.* at 499). Based on the five-step analysis, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 982).

On March 19, 2025, the Appeals Council affirmed the ALJ's decision, making it a final decision by the Commissioner of the SSA. (Dkt. 10-1 at 474). The Appeals Council rejected Plaintiff's filed exceptions, finding that ALJ Laskaris followed the Appeals Council's 2023

remand order, properly considered all relevant evidence, and provided sufficient rationale to explain the weight given to each doctor's opinion. (*Id.* at 474-75). On May 20, 2025, Plaintiff filed this action seeking review of ALJ Laskaris' decision. (Dkt. 1). The Commissioner now moves to reverse the Commissioner's decision and remand the case to the SSA for further proceedings. (Dkt. 12).

**LEGAL STANDARD**

### I.    ALJ Legal Standard

Under the Social Security Act, a person is disabled if they have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. §§ 404.1520, 416.920(a)(4)(i)-(iii). If the answer at step three is yes, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii); *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). If not, the evaluation continues and the ALJ must determine (4) whether the claimant can perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv-v); *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must consider (5) the claimant's age, education, and prior work experience and evaluate whether he is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-

related activities he can perform given his limitations. 20 C.F.R. § 416.920(a)(4)(iv-v); *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The claimant bears the burden of proof at steps one through four. *Young*, 957 F.2d at 389. In the final step, the burden shifts to the Commissioner to show there are significant jobs available that the claimant can perform. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984). A negative answer at any step, other than at step three, precludes a finding of disability. *Young*, 957 F.2d at 389.

## II.     Judicial Review

Section 405(g) provides, in relevant part, that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). On review, the Court may affirm, modify, or reverse the Commissioner's decision with or without remanding the case for a rehearing. *Id.*; *see also Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011)*.* The court may reverse with an instruction to award benefits only if "all factual issues have been resolved and the record can yield but one supportable conclusion." *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 355 (7th Cir. 2005) (citation omitted).

Judicial review of the ALJ's decision is "limited to ensuring that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024); *see also Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In reviewing the ALJ's decision, the Court does not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakasi*, 25 F.4th 470, 473 (7th Cir. 2022) (quoting *Gelatos v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Where conflicting evidence would allow reasonable minds to

differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The substantial evidence standard is a low bar. *See Thorton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025); *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). The Court will reverse an ALJ's decision "only if the record compels a contrary result," *Thorton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025), or if it is "the result of an error of law." *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023).

## DISCUSSION

Plaintiff seeks review of ALJ Laskaris' decision on three grounds—Plaintiff alleges that (1) the ALJ did not follow "the remand orders"; (2) the ALJ "cherry picked" the record to explain its decision and ignored most evidence from Plaintiff's treating doctors; and (3) the ALJ relied "mostly on consultants" for evidence while trying to "discredit the treating doctors." (Dkt. 1 at 5). Plaintiff asks the Court to modify the Commissioner's decision and grant monthly maximum insurance benefits retroactive to the date of initial disability. (*Id.* at 4). The Commissioner seeks a reversal of the ALJ's decision with a remand to the SSA on the grounds that ALJ Laskaris omitted some of the limitations that one of Plaintiff's treating doctors opined. (Dkt. 15); (Dkt. 16 at 2). The Court agrees, and remands on this basis.

An ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but he must build a logical bridge from the evidence to his conclusion. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). An ALJ is not permitted to "cherry-pick

9

facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010).

ALJ Laskaris considered the opinions of state agency consultants, including Dr. Muhammad Rafiq. (Dkt. 10-1 at 494). The ALJ gave great weight to Dr. Rafiq's opinion, concluding that it was "generally consistent" with his examination of Plaintiff and "all other records." (*Id.*). When an ALJ finds opinion evidence persuasive and adopts some of the opinion's findings, he must explain why he did not adopt others. *See Eric W. v. O'Malley*, 2024 WL 4333297, at *3 (N.D. Ill. Sept. 27, 2024) (citations omitted); *Clarence D. v. Kijakazi*, 2022 WL 4132478, at *4 (N.D. Ill. Sept. 12, 2022) (An ALJ is "not free to adopt some of [a State agency consultant's] findings while ignoring others – especially those that directly contradicted [his] bottom-line conclusion."). ALJ Laskaris erred because he did not explain why he adopted some of Dr. Rafiq's opinions but not others.

Dr. Rafiq performed a consultant examination of Plaintiff in March 2023. (Dkt. 10-2 at 319-334). Dr. Rafiq opined that Plaintiff could frequently lift and carry up to 20 pounds; use both hands to reach, handle, finger, feel, push and pull; operate foot controls with both feet; climb stairs and ramps; balance, stoop, kneel, crouch, and crawl; operate a motor vehicle; and tolerate exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold and heat, and vibrations. (*Id.* at 1293-94, 1296). He found that Plaintiff could only occasionally climb ladders or scaffolds, move mechanical parts, and tolerate exposure to unprotected heights. (*Id.* at 1294, 1296). Dr. Rafiq also opined that, per an eight-hour workday, Plaintiff could sit for six hours, stand for three hours, and walk for one hour. (*Id.* at 1292). Additionally, Plaintiff could sit for two hours, stand for 45 minutes, and walk for ten minutes without interruption. (*Id.*).

In addition, Dr. Rafiq opined that, based solely on Plaintiff's physical impairments, he could perform activities like shopping; traveling independently; ambulating without a wheelchair, walker, canes, or crutches; using public transportation; climbing a few steps with the use of a hand rail; preparing a simple meal and feeding himself; caring for his personal hygiene; and sorting, handling, and using paper/files. (*Id.* at 1295). Dr. Rafiq observed that Plaintiff could get on and off and the exam table without difficulty; walk more than 50 feet without support; stand and rise; and fully extend his hands, make fists, and oppose his fingers to his thumbs. (*Id.* at 1230). His gait was normal without a cane, as was the range of motion of his lumbar spine. (*Id.*). Dr. Rafiq noted that Plaintiff could stand or walk on his toes or heels and could stand on one leg but could not hop on one leg. (*Id.*). Plaintiff's straight leg test was "positive bilaterally." (*Id.*). He further noted that while Plaintiff told him that he could not work because of his depression and anxiety, Plaintiff had a normal appearance, behavior, and ability to relate during the examination. (*Id.* 1228, 1300). Dr. Rafiq stated that there were no signs of depression, agitation, irritability, or anxiety. (*Id.* at 1300).

ALJ Laskaris adopted many of Dr. Rafiq's opinions but did not address or adopt some. While the ALJ noted that Dr. Rafiq opined that Plaintiff could lift up to 20 pounds, he did not adopt this opinion or explain why. (Dkt. 10-1 at 494). He did not address Dr. Rafiq's opinion that Plaintiff could only walk for ten minutes at a time, or any of Dr. Rafiq's opinions about Plaintiff's mental status. (*Id*). He also did not address or explain the impact of Dr. Rafiq's neurologic and musculoskeletal exam results. (*Id.*). This constitutes reversible error. *See, e.g.*, *Michael S. v. Dudek*, 2025 WL 1222579, at *3-4 (N.D. Ill. Apr. 28, 2025) (remanding case to SSA where ALJ gave some weight to state agency consultant's opinions but did not explain why he did not adopt others); *Heather W. v. Kijakazi*, 2022 WL 4386017, at *3 (N.D. Ill. Sept. 22, 2022) (same). The case must be remanded to properly assess all of Dr. Rafiq's opinions.

The Court also finds that ALJ Laskaris failed to sufficiently explain why he rejected opinion evidence from Plaintiff's treating doctors, Dr. Jose Castellanos and Dr. Mitchell Goldflies. The opinion of a treating physician is afforded controlling weight if it is both "well supported" by clinical and diagnostic evidence and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because of a treating doctor's "greater familiarity with the claimant's condition and circumstances," *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003), an ALJ must "offer good reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citations omitted); *see also Stage v. Colvin*, 812 F.3d 1121, 1127 (7th Cir. 2016). In other words, the ALJ cannot reject a treating physician's opinion without a "sound explanation." *Hardy v. Berryhill*, 908 F.3d 309, 312 (7th Cir. 2018) (citations omitted)

ALJ Laskaris gave little weight to Dr. Castellanos' 2017, 2020, and 2023 opinions on the grounds that they were inconsistent with the overall medical record. (*Id*. at 496-96). Dr. Castellanos opined, in part, that Plaintiff's pain interfered with his attention, concentration, and ability to perform simple work tasks. (Dkt. 10-1 at 467-472); (Dkt. 10-2 at 269-70). In doing so, ALJ Laskaris failed to grapple with evidence supporting Dr. Castellanos' opinions. For example, the ALJ did not fully engage with evidence of Plaintiff's self-reported pain levels and Plaintiff's testimony that he can only lift ten pounds and can sit and stand for one hour. (Dkt. 10-1 at 558, 560-61); (Dkt. 10-2 at 34, 67, 170). To properly discount Dr. Castellanos's opinion, ALJ Laskaris "needed to identify a problem with [his] medical techniques or point to substantial evidence that undermined [his] opinions." *Sam K. v. Kijakazi*, 2021 WL 5759279, at *5 (N.D. Ill. Dec. 3, 2021). He did not do so.

Additionally, ALJ Laskaris explained why he was giving only partial weight to Dr. Goldflies' November 2015 opinion but did not evaluate the rest of Dr. Goldflies' other opinions or explain why did not adopt them. (Dkt. 10-1 at 495). Dr. Goldflies examined Plaintiff several times throughout 2015, 2016, 2017, and 2020. (Dkt. 10-1 at 399-404); (Dkt. 10-2 at 54-87, 107-115). ALJ Laskaris was required to at least "minimally discuss" the reasons why he chose to discredit the rest of Dr. Goldflies' opinions, but he did not offer any explanations. *See Godbey v. Apfel,* 238 F.3d 803, 808 (7th Cir. 2001). On remand, the ALJ must reassess the opinions of Plaintiff's treating doctors and, if he chooses to discredit any of them, he must explain why.

Finally, the Court also finds that ALJ Laskaris mischaracterized Plaintiff's testimony about his pain levels and failed to explain why he dismissed other instances of Plaintiff self-reporting his pain. In determining Plaintiff's RFC, ALJ Laskaris noted that Plaintiff testified at the January 2021 hearing before ALJ Wardell that his pain was at a three out of ten. (*Id.* at 488). This is a mischaracterization. Plaintiff testified that his pain ranges from three to ten on a scale from zero to ten. (*Id.* at 558). Additionally, ALJ Laskaris noted that Plaintiff reported pain at a four out of ten in July 2017, a five-to-six out of ten in October 2020, and a three out of ten on other occasions. (*Id.* at 491-92). But ALJ Laskaris did not account for documented incidents in the medical record when Plaintiff reported pains levels of seven or higher. (*See, e.g,* Dkt. 10-2 at 34 ("Average pain is 6 and ranges between 3-9"); *Id.* at 67 ("Pain is constant 8/10"); *Id.* at 170 ("Pt rates the pain 7/10")).

It is reversible error for an ALJ to mischaracterize evidence. *See Guest v. Colvin*, 2016 WL 2987001, at *5 (N.D. Ill. May 24, 2016) (reversing and remanding where ALJ mispresented plaintiff's reported daily activities); *Terry v. Astrue*, 580 F.3d 471, 477-78 (7th Cir. 2009) (remanding in part because the ALJ mischaracterized evidence as inconsistent with claimant's

testimony). Further, the Seventh Circuit has repeatedly noted that "pain alone can be disabling," even in the absence of objective test results that evidence a disabling condition. *Stark v. Colvin*, 813 F.3d 684 (7th Cir. 2016); *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). Although the ALJ is not required to accept Plaintiff's testimony about his pain, the ALJ "must minimally explain why [he] did not fully credit [Plaintiff's] testimony and how [he] accommodated the limitations [he] did credit." *Madeline P. v. Kijakazi*, 2023 WL 2018913, at *4 (N.D. Ill. Feb. 15, 2023). ALJ Laskaris did not do so here. The Court cannot, and will not, make assumptions about how the ALJ evaluated and weighed the evidence and Plaintiff's testimony. *Briscoe*, 425 F.3d at 352 (finding that an ALJ must explain how the evidence supports their specific functional restrictions); *Scott v. Astrue*, 647 F.3d 734, 740-41 (7th Cir. 2011) (holding that an ALJ must consider claimant reports on the limiting pain of their medically determinable impairments). Therefore, the case must be remanded for further explanation from the ALJ regarding Plaintiff's self-reported pain.

The ALJ's determination was marred by error. Because there are factual issues that remain unresolved, the Court cannot award Plaintiff disability benefits as requested. The Court also cannot affirm the ALJ's decision because the errors were not harmless. The harmless error doctrine allows this Court to affirm the Commissioner's disability determination if it can conclude with "great confidence" that the ALJ would reach the same conclusion absent the error. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *see also Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003) ("[T]he doctrine of harmless error . . . is fully applicable to judicial review of administrative decisions."). The errors described above are not harmless because the Court is unable to predict with great confidence that the ALJ would reach the same conclusion absent the errors. Accordingly, remand is appropriate here.

14

The Court reverses the ALJ's decision and remands the case to the SSA for further proceedings pursuant to 42 U.S.C. § 405(g). On remand, the ALJ shall reevaluate the opinions of Dr. Rafiq, Dr. Castellanos, and Dr. Goldflies and articulate his reasons for accepting or rejecting their opinions considering the other evidence of record. The ALJ must also reevaluate Plaintiff's testimony and other evidence of Plaintiff's self-reported pain levels and explain the basis for discrediting any such evidence.

In light of the Court's remand, it will not address the remaining errors claimed by Plaintiff. *See Marisol V. v. Kijakazi*, 2022 WL 865836, at \*3 (N.D. Ill. Mar. 22, 2022); *Charles N. v. O'Malley*, 2024 WL 3581902, at \*8 (N.D. Ill. July 30, 2024) The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found. On remand, the ALJ should properly evaluate all of Plaintiff's testimonial evidence and all of the medical opinion evidence. Furthermore, the Court instructs the ALJ to ensure that both this order and Judge Gettleman's order are followed on remand. *See Alesia v. Berryhill*, 2018 WL 3920534 (N.D. Ill. Aug. 16, 2018) (holding that ALJ was required to conform to two prior remand orders from federal judges); *see also Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991) (explaining the law of the case doctrine dictates that "once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case.").

**CONCLUSION**

For the foregoing reasons, the Commissioner's Motion for Remand [12] is granted. The

Commissioner's decision is reversed, and the case is remanded for further proceedings consistent

with this opinion. The Clerk is directed to enter judgment and terminate the case.

_____
Virginia M. Kendall
United States District Judge

Date: January 14, 2026

16